UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:18-cv-1070-T-02CPT

CHISTOPHER CARNEGIE,

     Plaintiff,

vs.

FIRSTFLEET, INC. OF TENNESSEE
d/b/a FIRST FLEET, INC.

     Defendant.

_____/

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO QUASH SUBPOENA _DUCES TECUM_ WITHOUT DEPOSITION TO PLAINTIFF'S CURRENT EMPLOYER OR, ALTERNATIVELY, MOTION FOR A PROTECTIVE ORDER**

Defendant, FIRSTFLEET, INC. OF TENNESSEE d/b/a FIRST FLEET, INC. ("Defendant" or "FIRSTFLEET"), hereby responds in opposition to the Motion to Quash Subpoena _Duces Tecum_ Without Deposition to Plaintiff's Current Employer or, Alternatively, Motion for a Protective Order [DE 26] filed by the Plaintiff, CHRISTOPHER CARNEGIE, and states as follows.

**I.    SUMMARY OF THE ARGUMENT**

Plaintiff's motion to quash should be denied as the documents sought are highly relevant and proper in this cause.  Specifically, in Topics 1 and 4 of Defendant's Subpoena to Plaintiff's employer, (Plaintiff's personnel files, employment applications, agreements or contracts relating to Plaintiff's employment or conditions of employment with his current employer) Defendant seeks documents that would be relevant to the amount of alleged prejudice Plaintiff sustained – as pled in his Complaint – due to the alleged late receipt of a COBRA notice from after his

separation of employment.  These documents relate to (1) Plaintiff's claim that he was not able to obtain medical insurance, (2) Plaintiff's entitlement (or lack thereof) to $110 in fines per day, which are the maximum fines available under ERISA, (3) Defendant's defense that Plaintiff failed to mitigate his damages, and (4) Defendant's defense that Plaintiff is not a proper class representative. As such, the documents requested are relevant and should be produced by the third party employer, U.S. Postal Service.

Plaintiff, however, has filed a motion seeking to quash and/or obtain a protective order precluding Defendant from obtaining these relevant documents based on his incorrect contention that the documents sought are irrelevant to this action. Plaintiff has also requested a protective order based on nothing other than conclusory recitations of the grounds for a protective order under Rule 26(c).

Given the relevance of the documents and the broad scope of permissible discovery, Plaintiff's Motion seeking to quash the Subpoena should be denied. This Court also should deny Plaintiff's alternative request for a protective order since Plaintiff has not, and cannot, meet the standard for such relief.

## II.    PROCEDURAL HISTORY

1.      On or about May 2, 2018, Plaintiff filed a Class Action Complaint and Demand for Jury Trial against Defendant, in which he asserted claims for violation of 29 U.S.C. §1166(a) and 29 C.F.R. §2590.606-4 governing the provision of COBRA notices. *See* Compl. [ECF No.1].

2.      In the Complaint, Plaintiff alleges that following termination of his employment in January 2017, he was "unable to obtain continuation [medical] coverage after receiving the deficient election notice and lost his insurance, incurring medical bills." *Id*. Compl., at ¶5, 18 & 22. *See also* Compl., at ¶27 (in which Plaintiff claims that he suffered a tangible injury in the form of loss of insurance coverage).

2

3.      Additionally, Plaintiff seeks to assert the claims on behalf of the following class:

All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by Defendant during the applicable statute of limitations period as a result of a qualifying event, as determined by Defendant.

*Id.* at ¶28.

4.      In doing so, Plaintiff has alleged that his claims are "typical" of the class. *Id*. at ¶31.

5.      Plaintiff has asserted that, among the inquiries to be made by this Court is "[w]hether statutory penalties should be imposed against Defendant under 29 U.S.C. §1132(c)(1) for failing to comply with COBRA notice requirements, and if so, in what amount." *Id.* at ¶33(c).

6.      Plaintiff seeks, among other things, "statutory penalties to the Class pursuant to 29 U.S.C. §1132(c)(1) and 29 C.F.R. §2575.502c-1 in the amount of $110 per day for each Class Member who was sent a defective COBRA notice by Defendant. *Id.* at p. 14.

7.      On June 14, 2018, Defendant filed its Answer and Affirmative Defenses to the Complaint. *See* Answer and Affirmative Defenses to the Complaint [ECF No. 10]. Defendant asserted, among others, the following defenses:

**Third Defense**
Plaintiff and each member of the class he seeks to represent must mitigate any and all damages, and Defendant may be entitled to an offset.

**Eleventh Defense**
Plaintiff is not an adequate representative of the class of individuals he seeks to represent. Plaintiff cannot satisfy the requirements of a class action, and some or all of the claims asserted in the Complaint are barred because Plaintiff is not similarly-situated to the group of individuals he purports to represent, the existence of which is expressly denied, and/or the members of the group of individuals Plaintiff purports to represent, the existence of which are expressly denied, who are not similarly situated to each other.

### Twelfth Defense

Class-wide relief is inappropriate because individual issues predominate over issues generally applicable to the class.

### Thirteenth Defense

The class Plaintiff seeks to represent is not sufficiently numerous and does not have sufficient common or typical issues to warrant class-wide relief.

### Fifteenth Defense

Some or all of the claims alleged by Plaintiff are neither common to nor typical of those, if any, of the alleged groups of persons whom she purports to represent, the existence of which are expressly denied.

*Id.*

8.      On August 29, 2018, Plaintiff served his responses to Defendant's Interrogatories stating he is employed at the United States Postal Service as a City Carrier Assistant earning $17.67 per hour since March 2017 (about 2 months after he left employment with Defendant). (*See* Plaintiff's Responses to Interrogatories, pertinent portions of which are attached as Exhibit A, at ¶6.)  Plaintiff did not respond to the portion of Interrogatory No. 6 seeking information regarding the medical benefits he has been offered or received.

9.      On October 1, 2018, Defendant took Plaintiff's deposition. (*See* Transcript of Deposition of Plaintiff ("Plaintiff Tr."), relevant portions of attached as Exhibit B).

10.     Plaintiff testified at his deposition that he voluntarily resigned from his employment with Defendant as part of a settlement pertaining to an earlier claim against Defendant for worker's compensation benefits.  Plaintiff Tr., at 26:22-27:25, 96:16-22, 97:12-14.[1]

---

[1] He further testified that, following the termination of his employment with Defendant, he thought that Defendant would offer him COBRA insurance because he had received two prior COBRA notices from employers prior to Defendant. Plaintiff Tr., at 30:13-19; 31:6-32:15; 33:6-9; 51:21-23. Plaintiff said that he knew that COBRA would provide insurance to him after leaving employment as long as he paid for it. Plaintiff Tr., 53:8-17. Given his prior knowledge of

4

11.     Plaintiff further testified that he was employed by the U.S. Postal Service since February 2017, through which employment he obtained health insurance and dental insurance for himself and his 15-year-old child two or three months (he cannot specifically recall) after he started and pays around $240 per month.    Plaintiff Tr., at 21:2-23:12, 60:13-23. Plaintiff also testified that he applied to his new employer, the U.S. Postal Service, for health benefits upon commencing his employment, but thought there was mandatory waiting period for the benefits to commence. *See* Plaintiff Tr., at 33:19-34:6.

12.     Following Plaintiff's deposition, on October 9, 2018, Defendant provided notice that it intended to serve a Subpoena to the U.S. Postal Service.  After Plaintiff's counsel objected to a number of the topics, Defendant's counsel agreed to revise the subpoena to the following documents:

> 1. Any and all personnel files of **CHRISTOPHER CARNEGIE (SSN XXX-XX-XXXX, DOB 1/2/XXXX)**.
>
> 2. Any and all documents relating to, concerning or evidencing **CHRISTOPHER CARNEGIE** payroll history, including but not limited to pay stubs, timesheets, time cards, schedules, bonus payments, reimbursements, overtime payments and any other documents related to payments made to **CHRISTOPHER CARNEGIE**.
>
> 3. Any and all documents relating to, concerning, or evidencing employee health plan benefits received and/or available to **CHRISTOPHER CARNEGIE,** including but not limited to medical or health insurance and pension or retirement benefits.  This should include employee benefits plans that **CHRISTOPHER CARNEGIE** was eligible for and benefit plans in which **CHRISTOPHER CARNEGIE** was a participant.
>
> 4. Any and all employment applications, agreements or contracts relating to **CHRISTOPHER CARNEGIE'S** employment or conditions of employment.

---

COBRA benefits, after two months, Plaintiff wondered why he had not received his COBRA notice and knew that was unusual. Plaintiff Tr., 82:4-15; 83:12-14.

5. A Declaration of Authenticity.

Subpoena [D.E. 26-1], at p. 4.

13.     Plaintiff does not object to Request Nos. 2, 3 and 5 of the Subpoena.

For the reasons set forth below, Plaintiff's Motion seeking to quash Request Nos. 1 and 4 or obtain a protective order should be denied.

## III.    MEMORANDUM OF LAW

### A.      The Documents Defendant Seeks Are Relevant and Discoverable

The scope of discovery pursuant to a subpoena is the same as the scope of discovery under Rule 26.  *Barrington v. Mortgage IT, Inc.*, Case No. 07-61304-Civ-Cohn/Seltzer, 2007 U.S. Dist. LEXIS 90555, at *8-9 (S.D. Fla. Dec. 10, 2007).  Rule 26 permits parties to "obtain discovery regarding any nonprivileged matter **that is relevant to any party's claim or defense** and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED.R.CIV.P.  26(b)(1) (emphasis supplied).  The term "relevant" should be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)).

Despite the broad scope of permissible discovery, Plaintiff argues that the documents requested in Request Nos. 1 and 4 are not relevant to the instant litigation. In doing so, Plaintiff overlooks the issues to be considered in this matter.

In this action, Plaintiff alleges that Defendant violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget

Reconciliation Act ("COBRA"). In doing so, Plaintiff seeks damages, including statutory penalties of $110 per day pursuant to 29 U.S.C. §1132(c)(1) and 29 C.F.R. §2575.502c-1. *See* Compl., at p. 14. Essentially, Plaintiff seeks the maximum amount of penalties available for the alleged violation. *Id. See also* 29 U.S.C. §1132(c)(1)(setting forth penalties of $100 per day); 29 C.F.R. §2575.502c-1 (increasing penalties to $110 per day).

The Eleventh Circuit has held that ***injury or prejudice*** to the plaintiff is a factor that should be considered in determining the appropriate penalty in a matter governed by ERISA. *See, e.g., Scott v. Suncoast Bev. Sales, Ltd.,* 295 F.3d 1223 (11th Cir. 2003)(citing *Curry v. Contract Fabricators, Inc.*, 891 F.2d 842, 847 (11th Cir. 1990)); *Sziranyi v. Dunn*, 2009 U.S. Dist. LEXIS 128536 (S.D. Fla. Sept. 30, 2009). In other words, the amount of the penalty may be reduced or increased based on the prejudice to the plaintiff.  Plaintiff, in his complaint alleges that he has suffered an injury by not receiving timely COBRA notice.  *See* paragraph 2, *supra*. and ¶22 ("Plaintiff was unable to obtain continuation coverage after receiving the deficient election notice and lost his insurance, incurring medical bills") and ¶27 ("Plaintiff also suffered a tangible injury in the form of loss of insurance coverage due to Defendant's deficient Notice. … [Plaintiff] a qualified beneficiary is unable to obtain continuation coverage and instead must resort to more expensive and less preferable coverage….") *Id.*

Here, documents responsive to Request Nos. 1 and 4 (personnel file, employment related agreements, applications and contracts) are likely to contain information that relate to the prejudice Plaintiff has allegedly suffered.  For instance, documents responsive to Request No. 1 are likely to contain information regarding when the U.S. Postal Service offered Plaintiff his position (when he commenced employment), whether it offered him any other positions that would have affected his health/dental benefits, when he could have commenced work for the

U.S. Postal Service (*i.e.*, whether he determined not to commence it as soon as possible), when he was qualified to receive medical insurance, and when he decided to apply for the medical insurance plan, among other things.  Similarly, documents responsive to Request No. 4 are likely to show when Plaintiff applied for his position with the U.S. Postal Service and when he commenced the position. Those categories of documents and information all relate to the prejudice Plaintiff did, or did not, suffer due the allegedly late COBRA notice.

Notably, in Plaintiff's deposition, he testified that he refrained from seeking medical treatment  until he obtained new medical coverage with U.S. Postal.  Plaintiff Tr., 71:1-5. Plaintiff then testified that if he had received timely COBRA notification, he would have obtained medical treatment prior to when his medical insurance became effective with his new employer.  *Id.* at 93:24-94:1-5.  Plaintiff further testified that even though the cost of COBRA was around $1,200 a month, Plaintiff Tr., 95:24-96:1-2) - substantially more than the $240 per month Plaintiff claims to be paying his new employer for medical/dental insurance,  Plaintiff Tr., at 21:2-23:12, 60:13-23, he would have sought medical treatment (at the COBRA cost) and not of had to wait "three months" for such treatment.  Plaintiff Tr. 96:3-14.  Consequently, information from his new employer about when he applied and was hired, in addition to the medical coverage offered and accepted is highly relevant.

And, to the extent that Plaintiff applies for class certification, those documents will speak to the typicality of Plaintiff's claims to the putative class, Plaintiff's adequacy as a class representative and the commonality of the putative class.  At bottom, the documents Defendant seeks in Request Nos. 1 and 4 relate to Plaintiff's allegations in the Complaint, including Paragraph Nos. 5, 18, 22, 27, 28, 31, 33 and p. 14 (Prayer for Relief). They also relate to Defendant's Third, Eleventh, Twelfth, Thirteenth and Fifteenth Affirmative Defenses concerning

Plaintiff's failure to mitigate damages and Plaintiff's ability to represent the class.

Contrary to Plaintiff's suggestion, the documents responsive to Request Nos. 2 and 3 would not provide the aforementioned information. Worse still, Plaintiff was unable to provide the majority of that information in discovery with certainty. *See* Plaintiff Tr., at 21:2-23:12, 33:19-34:6, 60:13-23.  For example, Plaintiff's response to Interrogatory No. 6 and his testimony conflict as to when he commenced his position at the U.S. Postal Service. Compare Ex. A, at Response No. 6 (where Plaintiff said he started in March 2017); Plaintiff Tr., at 21:6-7 (in which Plaintiff testified he started "I believe in maybe February of 2017").   Yet, Plaintiff claimed during his deposition that because he didn't have insurance (no COBRA coverage due to the late notice), he was unable to obtain medical treatment.

Defendant has no means to obtain that information with certainty other than from the U.S. Postal Service in Request Nos. 1 and 4. Accordingly, pursuant to Rule 26, those documents are relevant and discoverable and are not duplicative, and this Court respectfully should deny Plaintiff's Motion seeking to quash the Subpoena, especially with Plaintiff trying to assert himself as a class representative of potentially thousands of members.

### B.   Plaintiff Has Not Met The Standard For A Protective Order

Rule 26(c) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending…. FED.R.CIV.P. 26(c)(1). Upon such application, the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…."  In determining whether good cause exists, the initial inquiry is whether the moving party has shown that disclosure will result in a "clearly defined and very serious injury." *Williams v. Board of County Commissioners,* 2000 WL 133433, *2 (D.Kan. 2000) (quoting *Zapata v. IBP, Inc.,* 160 F.R.D. 625, 627 (D.Kan. 1995)).

The Eleventh Circuit has identified four factors to consider in determining the existence of good cause: "'[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order.'" *Chavez v. Arancedo*, 2017 U.S. Dist. LEXIS 110044 (S.D. Fla. July 7, 2017) (quoting *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1205 (11th Cir. 1985)). A party seeking a protective order bears the burden of proving good cause and must make "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" supporting the motion for protective order.  *U.S. v. Garrett,* 571 F.2d 1323, 1326 n.3 (5th Cir. 1978); Williams, 2000 WL 133433, *3.

In the instant case, Plaintiff has ambiguously objected to the relevance and scope of the documents requested, but has failed to specifically and with particularity allege any injury that will result from Defendant's subpoena. *See* Motion, at p. 8. He also attempts to improperly shift the burden to Defendant, rather than meeting his own burden of showing good cause. *See id.* (in which Plaintiff states that "Defendant has not shown how such an overly broad request is proportional to the needs of this case, or how any benefit from receiving the records outweighs the burden to Plaintiff and/or subpoenaed nonparty"). Finally, Plaintiff ignores the fact that a protective order issued pursuant to Rule 26(c) is based upon a showing of "good cause," which he has not made.

Plaintiff primarily seeks a protective order under Rule 26(c) based on his objection to the relevance and/or scope of the documents Defendant seeks. Contrary to Plaintiff's suggestion, the documents that Defendant seeks may be vital to defending against Plaintiff's claims and there is no alternative avenue for obtaining the documents and information Defendant seeks. *See* Response, at III(A).

Secondarily, Plaintiff conclusorily states that the Subpoena was "designed" to embarrass and retaliate against Plaintiff, and to interfere with Plaintiff's current employment; however, he does not object to Topics 2, 3 and 5.  In other words, the subpoena would be served on his employer anyway for those items.

Likewise, Plaintiff argues that he seeks a protective order to "avoid annoyance, embarrassment and interfere [sic] to Plaintiff's employment." Plaintiff, however, does not state how the Subpoena would cause any of those issues, and the basis for those claims is not readily apparent.[2] Federal courts repeatedly have stated that conclusory statements do not support a motion for protective order and, here, Plaintiff has not relied anything other than conclusory statements.

In sum, Plaintiff's conclusory allegations do not rise to the level necessary to show a need for a protective order. Moreover, the documents are relevant to this action and Defendant should be entitled to obtain them. Accordingly, a protective order is not warranted.

**WHEREFORE,** the Defendant, FIRSTFLEET, INC. OF TENNESSEE d/b/a FIRST FLEET, INC., respectfully requests that this Court enter an Order denying the Motion of the Plaintiff, CHRISTOPHER CARNEGIE, seeking to quash the Subpoena Duces Tecum or, alternatively, seeking a protective order, and grant Defendant such other relief as this Court deems just and proper.

---

[2] Notably, Plaintiff also attempts to argue regarding the burden that purportedly may be sustained by the US Postal Service in producing the records but does not have standing to do so. *Auto-Owners Ins. Cov. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. Sept. 28, 2005)(party does not have standing to quash subpoenas on grounds of undue burden to third parties where third parties have not objected on those grounds).

11

Dated: October 26, 2018                    Respectfully submitted,

                                           *s/ Sherril M. Colombo*
                                           Sherril M. Colombo, Esq.
                                           Florida Bar No.: 948799
                                           E-mail:  scolombo@littler.com
                                           Secondary E-Mail: kljackson@littler.com
                                           Stefanie Mederos, Esq.
                                           Florida Bar No.: 12041
                                           E-mail:  smederos@littler.com
                                           Secondary E-mail: dperez@littler.com
                                           LITTLER MENDELSON, P.C.
                                           Wells Fargo Center
                                           333 SE 2nd Avenue, Suite 2700
                                           Miami, FL 33131
                                           Telephone: (305) 400-7500
                                           Facsimile: (305) 603-2552

                                           **Counsel for Defendant**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 26th day of October, 2018, I electronically filed the foregoing Document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing Document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in a manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                              By: *s/ Sherril M. Colombo*
                                  Sherril M. Colombo

## SERVICE LIST

*COUNSEL FOR PLAINTIFF*

Brandon J. Hill, Esq.
Florida Bar No. 37061
E-mail: bhill@wfclaw.com
Secondary E-mail:  jriley@wfclaw.com
Luis A. Cabassa, Esq.
Florida Bar No. 53643
E-mail: lcabassa@wfclaw.com
Secondary E-mail: twells@wfclaw.com
WENZEL FENTON CABASSA, P.A.
1110 N. Florida Avenue
Suite 300
Tampa, FL 33602
Telephone: (813) 224-0431
Facsimile:  (813) 229-8712

*COUNSEL FOR DEFENDANT*

Sherril M. Colombo, Esq.
Florida Bar No. 948799
E-mail: scolombo@littler.com
Secondary E-Mail: kljackson@littler.com
Stefanie Mederos, Esq.
Florida Bar No. 12041
E-mail: smederos@littler.com
Secondary E-mail: dperez@littler.com
LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone: (305) 400-7500
Facsimile:  (305) 603-2552