UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:18-cv-01070-CEH-CPT

CHRISTOPHER CARNEGIE, individually
and on behalf of all others similarly situated,

      Plaintiff,

v.

FIRST FLEET, INC. OF TENNESSEE
d/b/a FIRST FLEET, INC.

      Defendant.

_____/

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

CHRISTOPHER CARNEGIE ("Carnegie" or "Plaintiff") and FIRST FLEET, INC. OF

TENNESSEE d/b/a FIRST FLEET, INC. ("FirstFleet") (collectively the "Parties"), hereby move

for this Court's preliminary approval of the Parties' class action settlement[1]; preliminarily

certifying the proposed settlement class; designating Carnegie as the settlement class

representative and his attorneys as class counsel; approving the form and manner of class notice;

authorizing the settlement administrator to disseminate a notice of settlement to the settlement

class members; set a deadline to opt out or object and scheduling a final approval hearing no

earlier than one ninety (90) days after this Court's Preliminary Approval Order.

I.      **BACKGROUND**

A.      **Nature of Plaintiff's Claim**

1.      On or about May 2, 2018, Plaintiff filed a Class Action Complaint and Demand

for Jury Trial against FirstFleet in which he asserted claims for himself and a putative class

---

[1] The Class Action Settlement Agreement is attached as Exhibit "B".

against FirstFleet under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). [ECF No. 1]. Plaintiff alleged that FirstFleet violated the COBRA notice requirements by providing him, and other class members, deficient COBRA notice ("COBRA Notice") that failed to comply with certain requirements of the federal regulations, pursuant to 29 C.F.R. §2590.606-4(b)(4) *et. seq.* Plaintiff further alleged that the COBRA Notice received after the termination of his employment was untimely under ERISA.

2.  Plaintiff sought statutory penalties pursuant to 29 U.S.C. §1132(c)(1) and 29 C.F.R. §2575.502c-1 in the amount of $110 per day for himself and each putative class member who was sent an allegedly defective COBRA Notice. Plaintiff also claimed injunctive relief individually, and on behalf of the putative class, regarding the subject COBRA Notice.

**B.    FirstFleet's Defenses**

3.  FirstFleet responded to the Complaint on June 14, 2018 by denying certain allegations, including that the alleged COBRA Notice attached to the Complaint was the correct notice sent to Plaintiff (and the putative class) and denied having violated any of the COBRA provisions cited in the Complaint. [ECF No. 10].

4.  FirstFleet also raised numerous affirmative defenses, including those directed at Plaintiff's class allegations – that Plaintiff is an inadequate class representative, the lack of numerosity, typicality, commonality, and that individual issues predominate over those typical of the class. (*See id*). FirstFleet further raised defenses, including preemption of common law claims, the failure to comply with Plan documents, the failure to mitigate damages, the failure to assert a cognizable cause of action, FirstFleet's good faith, Plaintiff's lack of injury, the failure to satisfy jurisdictional prerequisites and exhaust administrative remedies, the COBRA Notice met

the applicable legal standards, injunctive relief as inappropriate in that Plaintiff had an adequate remedy at law, Plaintiff's lack of standing and the failure to include all indispensable third parties.

5.      The Court issued a Case Management and Scheduling Order on July 5, 2018 establishing deadlines, including discovery completion by April 5, 2019, the filing of dispositive motions by May 10, 2019, mediation by December 15, 2018 and the trial term commencing October 7, 2019. [ECF No. 18].

6.      The Court granted Plaintiff's unopposed request and Plaintiff's Motion for Class Certification was extended until October 29, 2018. [ECF No. 19].

**C.    Discovery and Motion for Class Certification**

7.      The Parties provided initial disclosures and engaged in discovery, including written discovery request (interrogatories and requests for production).

8.      Plaintiff served a subpoena for documents on FirstFleet's third party administrative services provider for certain employee benefits under its applicable benefit plans, who provided declarations and documentation to the Parties, which were utilized in the Parties' class certification memoranda. [ECF Nos. 31 and 43].

9.      FirstFleet served a subpoena *duces tecum* on Plaintiff's current employer, the U.S. Postal Service, for documents. Plaintiff's counsel objected and moved to quash or for a protective order. [ECF No. 26]. A hearing before U.S. Magistrate Judge Tuite occurred on November 5, 2018. The Parties were able to resolve their discovery issues at the hearing with an amended subpoena subsequently served by FirstFleet on U.S. Postal Service.

10.     Plaintiff deposed FirstFleet's corporate representative, Alisha Young, on September 24, 2018, and FirstFleet deposed Plaintiff on October 1, 2018.

11.     On October 29, 2018, Plaintiff filed his Motion for Class Certification.  [ECF No. 31].  FirstFleet filed its Memorandum in Opposition to Plaintiff's Motion for Class Certification on December 3, 2018.  [ECF No. 43].

12.     The hearing on Plaintiff's motion to certify the class was scheduled for January 15, 2019.  [ECF No. 39].

**D.    Mediation and Settlement**

13.     The Parties and their Counsel attended mediation with mediator, Carlos Burreuzo, on December 7, 2018.  [ECF No. 25].  While the Parties initially reached an *impasse*, through the continued assistance of the Mediator, a settlement agreement was reached in principal, which was noted in the December 18, 2018 Mediation Report.  [ECF No. 47].

14.     Upon notification of the settlement, and pursuant to Local Rule 3.08(b), the Court entered a 60-day Order of dismissal.  [ECF No. 48].

15.     The settlement terms were subsequently set forth in a written Term Sheet, which was executed by the Parties.  (*See* Ex "A", the "Term Sheet").  The material terms provide, in relevant part, as follows:

a.     The total gross settlement amount is $386,000 ("settlement amount"), which includes monies paid to Plaintiff and the putative members of the two settlement classes, incentive awards, if any, class counsel's fees, costs, expenses, settlement administration, mediation fees and service payments.  FirstFleet will not be required to fund any portion of the settlement amount until the date set forth in the Parties' settlement agreement ("Settlement Agreement").

b.     The Parties' Settlement Agreement will be submitted to the Court for preliminary approval.

c.      Named Plaintiff may apply for an incentive payment/service award up to $10,000, which FirstFleet will not oppose.

d.      Plaintiff's counsel may apply to the Court for attorney's fees up to 33.33% of the settlement amount and seek to recover costs from the settlement fund, which FirstFleet will not oppose.

e.      The Parties will jointly select the settlement administrator after securing at least three competing bids from different administrators.

f.      The settlement will be made on a full claims-paid basis.

g.      If 35 or more of the putative class members file opt-out requests, FirstFleet shall have the right to withdraw from the settlement with the Settlement Agreement becoming null and void.

h.      Plaintiff will execute a general release in favor of FirstFleet and all of its COBRA notice providers and their representatives.

16.    The Parties subsequently entered into a Settlement Agreement, which incorporated the Term Sheet provisions.  (*See* Ex. "B," the "Settlement Agreement").

## II.    <u>OVERVIEW OF SETTLEMENT TERMS</u>

For the reasons set forth below, the settlement is fair, reasonable and adequate. More specifically,

a.      The settlement was vigorously negotiated at arm's-length with the assistance of the Mediator and mediation was conducted after the Parties had exchanged discovery and fully briefed class certification motions;

b.      Unclaimed settlement funds will not revert to FirstFleet. The Settlement Agreement provides for unclaimed funds (uncashed checks and those sent

but returned for which no available forwarding address can be located) will revert to Bay Area Legal Services, Inc., as a beneficiary, subject to Court approval;

     c.     The settlement provides for significant monetary and prospective relief that is well within the range of similar COBRA notice class action settlements;[2]

     d.     The settlement is not contingent upon the Court's approval of Class Counsel's attorneys' fees or costs, or any service/incentive award to the named Plaintiff;

     e.     The class release in the Settlement Agreement is narrowly-tailored to apply only to claims like those asserted in the lawsuit;

     f.     The Settlement Agreement provides for direct notice to settlement class members via U.S. First-Class Mail;

     g.     Settlement class members are not required to file claim forms in order to receive settlement checks, making this a "claims paid" settlement;

     h.     The Gross Settlement Fund will be a fully-funded common fund;

     i.     The settlement provides the opportunity for potential settlement class members to opt-out or object to the settlement within sixty (60) days of notice being mailed.

     j.     If any settlement class member fails to tender his/her settlement payment checks within the period provided in the Settlement Agreement, any funds remaining in the settlement account (after deduction for all Court-approved deductions) will revert and be paid exclusively to Bay Area Legal Services, Inc., upon Court approval.

### A. Proposed Nationwide Settlement Class(es)

The Settlement Agreement calls for certification of two nationwide Settlement Class(es) (collectively the "Settlement Class"), which are defined as follows:

The "Putative Class Members" are:

All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by Defendant during the applicable statute of limitations period as a result of a qualifying event, as determined by Defendant.

The Putative Class Members are also defined as those identified in Plaintiff's Motion for Class Certification:

Class #1: The Untimely COBRA Notice Class:

All participants and beneficiaries in the Defendant's Health Plan in the United States who were entitled to be provided notice of their COBRA rights due to a qualifying event pursuant to 29 U.S.C. 1163(a)(1)(2) and (4) and who were not provided a COBRA notice in the timeframe mandated by 29 U.S.C. 1166, between October 29, 2013 to May 2, 2018 or the date of receipt by the subject participants and beneficiaries, whichever is later.

Class #2:  The Deficient COBRA Notice Class:

All participants and beneficiaries in the Defendant's Health Plan in the United States who were sent a COBRA notice by Defendant in the form attached as Exhibit A, between October 29, 2013 to September 21, 2017, as a result of a qualifying event, as determined by Defendant, who did not elect continuation coverage.

Based on class data criteria provided by FirstFleet's third party administrative services provider, the total class size, with potential members for both classes, is approximately 2,078 (which includes 60 individuals in both Class #1 and Class #2).

### B. The Settlement Provides for Significant Relief

A settlement account will be funded in the total gross amount of $386,000, which

---

[2] Notably, a similar settlement agreement was recently approved for alleged deficient COBRA notice forms. *Valdivieso v. Cushman & Wakefield, Inc.,* Case No. 8:17-cv-00118-SDM-JSS (M.D. Fla. 2018).  The same counsel

will be used to compensate settlement class members on a *pro rata* portion of the gross settlement amount. This amount includes the anticipated amount that FirstFleet would pay if every class member participated in the settlement and received a settlement payment, class counsel's fees, costs and expenses, settlement administration expenses, mediation fees and service payments. The gross settlement amount shall be used to pay the following, pursuant to the Court's approval:

- Attorney's fees, costs and expenses awarded to Class Counsel;

- Administrative fees and expenses to send out the Court-approved notices and to administer the Settlement; and

- Class representative service/incentive award.

The net settlement proceeds of the total gross settlement will be distributed evenly among all settlement class members on a *pro rata* basis and will be received on a "claims paid" basis without the need to fill out, or submit, a claim form. The total of ***all payments,*** whether for attorney's fees, costs, expenses, administrative expenses, mediation fees, service payments and class member settlement payments, shall not exceed the gross settlement amount of $386,000. With the Settlement Class comprised of approximately 2,078 members, each settlement class member, who does not opt-out of the settlement, will be allocated a gross settlement payment of approximately $185.75. If the Court awards the amount sought for the service award, Class Counsel's attorney fees and costs, and expenses of settlement administration, the net amount payable to each class member will be approximately $100.00.

The Settlement Administrator will send a settlement payment by U.S. Mail to each settlement class member. Potential class members who elect to opt-out of the settlement may

---

in the *Valdivieso* case Wenzel, Fenton, Cabassa, P.A. brought this case on behalf of Plaintiff and the putative class.

pursue all of their claims without release.

### C.  Release of Claims

In exchange for the monetary and any other relief set forth in the Settlement Agreement, settlement class members who do not-opt out of the Settlement will release FirstFleet and its third party COBRA notice providers, FirstFleet's third party health care provider, its outsourced third party COBRA administrator, including Selerix, all entities identified in Paragraph N of Exhibit "A," and each of their affiliates, parent companies, subsidiaries, predecessors, successors, corporate family members, officers, directors, partners, employees, attorneys, agents, insurers, shareholders, representatives, trustees, principals, and assigns, from all claims asserted in Plaintiff's Complaint and all other claims that arise out of, or relate to, the facts alleged in the Complaint.

Settlement class members' claims, if any, which are unrelated to the facts and causes of action alleged in this cause are not released by the terms of the Settlement Agreement. Any potential settlement class members who elect to opt-out of the Settlement are not bound by the Settlement Agreement, nor the release, even though they may benefit from this Settlement because, at a minimum, they will have been informed of the alleged deficiencies and untimely COBRA Notice and of their right to participate in the Settlement.

### D.  Notice of Settlement, Claims Process, and Settlement Administration

The Parties have agreed to utilize a private, third-party vendor, to administer notice in this case. The Parties have also agreed that all fees and expenses charged by the Administrator shall be paid from the settlement account.

If the Parties' Settlement is preliminarily approved by this Court, Settlement Class Members, within ten (10) business days of the Court's preliminary approval, will be sent a Short Form Postcard Notice of Settlement via U.S. First-Class Mail. Mail.[3] The Short Form Postcard Notice will direct the Settlement Class Members to the Settlement Administrator's website, which will provide a long form of the Notice of Settlement, along with other pertinent documents (attached as Ex. "C"). This long form, or comprehensive notice that will be available on the Settlement Administrator's website will include, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) an explanation of Settlement Class Members' opt-out rights, a date by which Settlement Class Members must opt out, and information regarding how to do so; (6) instructions as to how to object to the Settlement and a date by which Settlement Class members must object; (7) the date, time, and location of the final approval hearing; (8) the toll-free number from which Settlement Class Members may obtain additional information about the Settlement; (9) contact information for the Settlement Administrator; and (10) the amount that Class Counsel may seek in attorneys' fees and expenses, as well as the proposed service/incentive award for the Plaintiff as Class Representative. Settlement Class Members will also be informed that they have 60 days from the date that the Short Form Notice of Settlement is mailed to opt out of the Settlement, or object to the Settlement.

---

[3] The Notice of Settlement will be sent to Settlement Class Members' addresses as they are maintained by FirstFleet's third-party COBRA administrator, subject to updating by cross-referencing the National Change of Address Database. In the event that a Notice is returned as undeliverable with a forwarding address, it will be forwarded to that address. If a Notice is returned without a forwarding address, the Settlement Administrator or Class Counsel will make reasonable efforts to obtain a valid address for the Settlement Class Member, and mail the Notice to the updated address.

The Settlement Administrator's website will allow Settlement Class Members who would like further information to download copies of the Complaint, Term Sheet, Settlement Agreement, settlement approval motion papers, and motion papers in support of the requested attorneys' fees, administrative expenses, and class representative service/incentive award.  In addition, there will be a toll-free number that Settlement Class Members may call for more information about the Settlement.

If the Court grants final approval of the settlement, the full amount of the gross settlement amount will be paid to the Settlement Administrator as reflected in the  Settlement Agreement, Ex. "B" at ¶38), the total deposit of the gross settlement sum of Three Hundred Eighty Six Thousand Dollars and No Cents ($386,000.00) shall be made into the Settlement Account, which sum may be paid in one or more deposits to the Settlement Account, which shall establish the gross settlement and be used by the Settlement Administrator to, among other things, pay Settlement Class Members and to pay any amounts approved by the Court  for Plaintiff's attorneys' fees and expenses, expenses of settlement administration, mediation, and any class representative service award.  Payment of this sum shall be the sole, total and only payment obligation FirstFleet and/or or any released party has in settlement of this Action. To the extent any money remains in the Settlement Fund after these distributions and after Class members have had 60 days to cash their settlement checks, such monies shall be paid (as noted above) as a *cy pres* donation to Bay Area Legal Services, Inc.

### E. Attorneys' Fees and Costs, Class Representative Award and Administration Expenses

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to 33.33% of the Settlement Amount and seek to recover costs from the common fund, which FirstFleet will not oppose. Class Counsel will file a separate motion seeking approval for

fees and costs up to the percentage identified and other limitations set forth in the Settlement Agreement.

The Parties have agreed that Plaintiff shall have, in addition to his claim provided as a member of the Settlement Class, an additional claim in the sum of $10,000 as a service/incentive award for the services provided to the Settlement Class in connection with the prosecution of this action, including attendance at his deposition and the mediation session. The service/incentive award shall come out of the common fund, subject to the Court's approval. Neither settlement approval, nor the size of the settlement fund, is contingent upon the full amount of any requested fees or Class Representative service/incentive award being approved.

Court-approved costs and fees of the Settlement Administrator shall be paid from the common fund.

### III.   PRELIMINARY SETTLEMENT CLASS CERTIFICATION

As part of preliminary approval of the Settlement, the Parties respectfully seek certification of the Settlement Class (Class #1 and Class #2) for the purposes of settlement in this case, as described above.

#### A.  The Settlement Agreement is Reasonable and Fair

When considering judicial approval of a class settlement agreement, the Court "should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Smith v. Wm. Wrigley Jr. Co.,* 2010 U.S. Dist. WL 2402249, at *2 (S.D. Fla., June 15, 2010).  Certification of a class under Federal Rules of Civil Procedure 23(a) and (b) is subject to a different analysis where certification is contested than where, as here, a proposed settlement is under review.

"[I]n its preliminary assessment of the fairness of the proposed agreement, the Court must take care not to intrude upon the private settlement negotiations of the parties any more than is necessary to determine that the agreement is not the result of fraud or collusion, and that it is fair and adequate in light of the potential outcome and the costs of litigation." *Smith v. Ajax Magnethermic Corp.*, 2007 U.S. Dist. WL 3355080, at *5 (N.D. Ohio, Nov. 7, 2007); *see also La. Wholesale Drug Co. v. Abbott Labs. (In re Terazosin Hydrochloride Antitrust Litig.),* 2005 U.S. Dist. LEXIS 46189, at *14 (S.D. Fla. Mar. 17, 2005) ("All proposed classes must meet the requirements of Rule 23, but the fact of settlement can have an effect on the analysis."). Rule 23 requirements are more easily satisfied in the context settlement than in contested litigation. *Sullivan v. DB Investments Inc.* 667 273, 290-91 (3d Cir. 2011) ("some inquiries essential to litigation class certification are no longer problematic in the settlement context."); *In re American International Group Inc. Securities Litigation*, 689 F.3d 229 (2d Cir. 2012) ("settlement is relevant to class certification").

The decision whether to approve a proposed class action settlement is "committed to the sound discretion of the district court." *In re US. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992). In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as "the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre- Val v. Buccaneers Ltd. Partn.,* 2015 U.S. Dist. LEXIS 81518 at *2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir.1977)).

**1. The Settlement Resulted from Good Faith Negotiations Among Experienced Counsel and Represents a Reasonable Amount**

"Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith,* 2010 U.S. Dist. LEXIS, at *7.  Here, the proposed Settlement Agreement is the result of arm's length negotiations that occurred during mediation with an experienced and impartial mediator.  *Perez v. Asurion Corp.,* 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well- respected mediator").  Moreover, counsel representing the Parties are experienced in class action and complex litigation and were well-versed in the strengths and weaknesses of this case.  Additionally, there is no evidence that the Parties, or their counsel, failed to act in good faith or somehow colluded in reaching the settlement terms and conditions.  In fact, the Settlement was reached after the discovery (requests for documents, interrogatories, third party discovery and depositions) and after the motions for class certification were fully briefed.  Needless to say, the Parties and their counsel were aware of the strengths and weaknesses of their positions and proceeded to negotiate in good faith leading to an amicable settlement agreement.

The Settlement also falls with a reasonable range.  More specifically, and as stated above, the gross recovery, according to the putative class size of 2,078, is approximately $185.75.  The amount is nearly 170% of the $110 statutory penalty that could be awarded by the Court for COBRA notice violations under 29 C.F.R. § 2575.502c-1. Further, this amount is within a reasonable range of settlements for this type of claim.  *See Valdivieso v. Cushman & Wakefield, Inc.,* Case No. 8:17-cv-00118-SDM-JSS (M.D. Fla. 2018) (court approved settlement for similar COBRA notice issues with each class member's gross recovery of $165.89 for a class of 2,351);

*Gilbert v. SunTrust Banks, Inc.,* Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement in COBRA notice case with each class member's gross recovery was $32.22).

Additionally, there is a risk that Plaintiff would not prevail on his claims considering there are no decisions directly on-point addressing whether, or not, the language of the COBRA Notice at issue violated any of the applicable legal regulations.    *See* 29 C.F.R. 2590.606-4(b)(4) (COBRA notice was written in a manner to be understood by the average plan participant); 29 C.F.R. §2590.606-4(b)(4)(viii) (explanation of the continuation coverage termination date); 29 C.F.R. 2590.606-4(b)(4)(i)(explaining the required identification of the party responsible under the plan for the administration of continuation coverage benefits).

Further, FirstFleet raised numerous defenses, including Plaintiff's failure to mitigate his damages or establish any prejudice by the COBRA Notice and the untimeliness of that notice. *See, e.g., Scott v. Suncoast Bev. Sales, Ltd.,* 295 F.3d 1223 (11th Cir. 2003)(citing *Curry v. Contract Fabricators, Inc.*, 891 F.2d 842, 847 (11th Cir. 1990)); *Sziranyi v. Dunn*, 2009 U.S. Dist. LEXIS 128536 (S.D. Fla. Sept. 30, 2009).  Moreover, evidence of the administrator's good faith, including immediate corrective efforts when notification violations come to light, and the absence of prejudice caused by technical violations, are also significant to the district court's determinations concerning statutory penalties. *Gomez v. St. Vincent Health, Inc.*, 649 F. 3d 583, 591 (7th Cir. 2011).  Some courts have not awarded any statutory penalties in COBRA notice cases in the absence of a showing of bad faith or prejudice.  *Id*. at 589-91; *Sanders v. Temenos USA, Inc.*, 2017 U.S. Dist. LEXIS 169288, *25-26 (S.D. Fla. Oct. 13, 2017)(same); *see also Morehouse*, 2018 U.S. Dist. LEXIS 189876, at *4-5 (recognizing that many courts determine not to impose statutory penalties).  As such, a successful outcome was not guaranteed should Plaintiff continue to litigate his claims.

Likewise, Plaintiff would have faced risks on class certification as asserted in FirstFleet's response in opposition to Plaintiff's Motion for Class Certification. [ECF No. 43 – arguments contained therein, including that Plaintiff was not an adequate class representative, and his claims were not typical or common to those of the purported class].

Finally, and further indicating the fairness of the settlement, the Parties have agreed that if more than 35 putative class members file opt-out requests, FirstFleet shall have the right to withdraw from the settlement with the Settlement Agreement becoming null and void.

## 2. The Settlement Occurred at the Proper Stage of the Proceedings

As more fully set forth above, pursuant to the Court's Case Management and Scheduling Order, the deadline to mediate this case was December 15, 2018. Mediation occurred – after the Parties exchanged discovery and took depositions (Plaintiff and FirstFleet's corporate representative were deposed) – on December 7, 2018. Additionally, the Parties' positions were well-known by the time of the mediation and the class certification motions were fully briefed.

Moreover, continuing with the litigation would have resulted in complex, costly and lengthy proceedings, including class discovery, additional depositions, summary judgment motion practice, trial preparations and then a trial on the merits. The time, costs and fees associated with these litigation activities would have been significant. Further, if Plaintiff prevailed on the class claims and prevailed on the merits, FirstFleet would likely appeal to the Eleventh Circuit, which would result in more expense and delay.

## 3. Plaintiff and his Counsel Support the Settlement

Plaintiff and his Class Counsel agree to the proposed settlement, which is further indicated by their execution of the Settlement Agreement. Plaintiff's counsel have also provided declarations showing their support for the settlement. If potential class members are not satisfied

with the settlement terms after receiving a Notice of Settlement, they have the opportunity to opt-out or object.

### B.  **The Settlement Class Meets the Requirements of Rule 23(a)**

A court can certify a settlement class where the proposed class, and proposed class representative, meets the four prerequisites in Federal Rule of Civil Procedure 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one of the three requirements of Federal Rule of Civil Procedure 23(b).  *See Vega v. T-Mobile USA, Inc.*, 564 F. 3d 1256, 1265 (11th Cir. 2009).  Here, pursuant to Rules 23(a) and 23(b)(3), Plaintiff seeks certification of a defined settlement class (the "Settlement Class") to consist of:

> Class #1: The Untimely COBRA Notice Class:
>
> All participants and beneficiaries in the Defendant's Health Plan in the United States who were entitled to be provided notice of their COBRA rights due to a qualifying event pursuant to 29 U.S.C. 1163(a)(1)(2) and (4) and who were not provided a COBRA notice in the timeframe mandated by 29 U.S.C. 1166, between October 29, 2013 to May 2, 2018 or the date of receipt by the subject participants and beneficiaries, whichever is later.
>
> Class #2:  The Deficient COBRA Notice Class:
>
> All participants and beneficiaries in the Defendant's Health Plan in the United States who were sent a COBRA notice by Defendant in the form attached as Exhibit A, between October 29, 2013 to September 21, 2017, as a result of a qualifying event, as determined by Defendant, who did not elect continuation coverage.

The proposed Settlement Class in this cause meets the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy of representation.

### 1.  **Numerosity**

The proposed class of approximately 2,078 individuals is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1)*. See Williams v. Wells Fargo Bank, NA.,*

280 F.R.D. 665, 671-72 (S.D. Fla. 2012) ("a class size of more than forty is adequate"). The Court may also find the numerosity factor satisfied if it would be difficult, inconvenient, and wasteful to attempt to join numerous plaintiffs into one case, using permissive joinder. Additionally, the nature and size of the individual claims also make joinder impracticable.

### 2. Commonality

The United States Supreme Court has clarified that to satisfy the commonality requirement of Rule 23(a), the plaintiff must "demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) (*citing Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982)). "[T]his prerequisite does not mandate that all questions of law or fact be common; rather, a single common question of law or fact is sufficient to satisfy the commonality requirement, as long as it affects all class members alike." *Klewinowski*, 2013 U.S. Dist. LEXIS 130591, at *5-6 (*internal quotations and citation to Dukes*, 131 S. Ct. at 2556, *and others omitted*); *see also Waters v. Cook's Pest Control, Inc.*, 2012 U.S. Dist. LEXIS 99129, at *26-27 (N.D. Ala. July 17, 2012).

The common questions, according to Plaintiff's class certification motion are, among other things: (1) whether FirstFleet violated COBRA's notice requirements as to both timeliness (Class #1) and content (Class #2); and (2) whether, and to what extent, statutory penalties are appropriate. [Doc. 31 at p. 16]. Further, Plaintiff contends that each member of the putative class received, or should have received the alleged untimely Notice (Class #1) and the purported inadequate Notice (Class #2). *See id*. These common issues support certification of the proposed Settlement Class (Class #1 and Class #2) for settlement purposes. *See Pierce v. Visteon Corp.,* 2006 U.S. Dist. LEXIS 98847, at *12 (S.D. Ind. Sept. 14, 2006); *Hornsby v. Macon Cty. Greyhound Park, Inc.,* 2013 U.S. Dist. LEXIS 6235, at *5 (M.D. Ala. Jan. 16,

2013). Thus, the claims of the Settlement Class members are based on the same set, or a similar set, of operative facts.

Moreover, even if the award of damages were to vary among class members, the Eleventh Circuit has held that the presence of individualized damages does not prevent a finding of commonality. *See Allapattah Serv., Inc. v. Exxon Corp.*, 333 F. 3d 1248, 1261 (11th Cir. 2003). Accordingly, the requirement of commonality has been met.

### 3. Typicality is Satisfied

Under Federal Rule of Civil Procedure 23(a)(3), typicality does not require identical claims:

> The focus of Rule 23(a)(3) typicality is whether the class representative's interests are aligned with the proposed class so as to stand in their shoes for the purposes of the litigation and bind them in a judgment on the merits. The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary.

A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). "Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Busby v. JRHBW Realty, Inc.*, 513 F. 3d 1314, 1322 (11th Cir. 2008). The typicality requirement "is said to limit class actions to those fairly encompassed by the named plaintiffs' claims." *GTE Co. of the Northwest v. EEOC*, 446 U.S. 318, 330 (1980).

In this case, the legal theories underlying Plaintiff's claims are identical to the putative members in the settlement classes. More specifically, Plaintiff alleges he received an untimely COBRA Notice. Those in Class #1 are alleged to have similarly received untimely notice of their COBRA rights. Plaintiff also alleges that the COBRA Notice received contained legally deficient content. The putative members in both Class #1 and Class #2 are alleged to have

received the same, or similar, COBRA Notice, which Plaintiff alleges contained content that did not comply with the COBRA regulations. In sum, Plaintiff, as the Class Representative, has claims that are "typical" of both Class #1 and Class #2; consequently, the typicality requirement of Rule 23(a)(3) has been satisfied. *See* FED. R. CIV. P. 23(a)(3); *Pierce,* 2006 U.S. Dist. LEXIS 98847, at *13 (claims considered typical as "[a]ll of the class claims stem from Defendants' alleged failure to provide COBRA notices pursuant to the dictates of 29 U.S.C. §1166, a common course of conduct, and are based upon the same legal theory").

### 4.  Adequacy of Representation

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4)*.* "This requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met*.* Plaintiff, Christopher Carnegie, is adequate given that his interests are equivalent to those in both settlement classes. There is also no obvious conflict of interest between Plaintiff and the settlement classes. The Plaintiff has the same interest as those in the Settlement classes in prosecuting his claims and, in fact, participated actively in the litigation by assisting Class Counsel in developing the facts necessary to file the Complaint, and by appearing at mediation and supporting the claims of his fellow Settlement class members.

Here, Plaintiff's counsel has extensive experience litigating other class action cases. *See generally* Cabassa Decl. (Ex. D), Hill Decl. (Ex. E), and Fulgencio Decl. (Ex. F). When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in FCRA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.").

Proposed Class Counsel has represented Rule 23 classes in many other cases, and is qualified to do so here. For example, the undersigned was appointed as class counsel in another COBRA notice class action case in *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No.: 8:17-cv-00116-MSS-SPF, as well as in *Valdivieso v. Cushman & Wakefield, Inc.,* M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS.

Mr. Hill and Mr. Cabassa were also appointed as class counsel in another case presided by Judge Jung in *Hargrett, et al. v. Amazon.com DEDC, LLC*, M.D. Fla. Case No.: 8 8:15-cv-02456-WFJ-AAS.  Other cases in which Mr. Hill and Mr. Cabassa have served as class counsel include S*peer v. Whole Foods Market Group, Inc.*, Case No.: 8:14-cv-03035-RAL-TBM (M.D. Fla., Sept. 9, 2015); *Patrick v. Interstate Management Company, LLC*, 8:15-cv-01252-VMC-

AEP (M.D. Fla.); *Smith, et al. v. QS Daytona, LLC*, Case No.: 6:15-cv-00347-GAP-KRS (M.D. Fla. Oct. 22, 2015) (Doc. 45); *Kohler v. SWF Operations, LLC* et al., 8:14-cv-02568-MSS-TGW (M.D. Fla. June 27, 2016); *Mahoney v. TT of Pine Ridge, Inc*., Case No.: 9:17-cv-80029-DMM (S.D. Fla. Nov. 20, 2017); and *Moody v. Ascenda*, *Inc., et a*l., 16-60364-WPD (S.D. Fla. March 12, 2018) (FCRA class action involving 58,000+ class members), among others.

### C.  The Settlement Class Meets the Requirements of Rule 23(b)(3)

Under Rule 23(b)(3), a proposed class must satisfy two factors: predominance and superiority. As discussed below, the proposed Settlement Class in this case meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because common questions of law or fact between the Parties predominate over individual questions, and class action is the best available method for adjudicating this controversy.

### 1.  Predominance

Predominance is governed by an analysis of whether liability may be resolved on a class- wide basis. "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions . . . In essence, the Court must determine whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Battle*, 2013 U.S. Dist. LEXIS 29263, at *10-11 (*internal citations omitted*). Though not a determination on the merits, a Rule 23(b)(3) analysis prevents the class from degenerating into a series of individual trials. *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996).

Here, common questions of law and fact predominate. The central common issues in this case concern a standardized COBRA Notice that was common to all Settlement Class members (all putative members in Class #1 and Class #2) are believed to have received the

same COBRA Notice as to the content that Plaintiff claims was not legally compliant. Moreover, common questions of law and fact pertain to whether FirstFleet should be required pay statutory penalties for utilizing that particular notice. Further, Class #1 members all are alleged to have received the same COBRA Notice late and not in compliance with the applicable regulations. *See, e.g., Slipchenko v. Brunel Energy, Inc.,* 2013 U.S. Dist. LEXIS 124159 (S.D. Tex. Aug. 30, 2013) (COBRA case finding common issues predominated).

## 2. Superiority

The Court must also consider whether the superiority requirement has been met. In making this determination, the Court may consider, among other factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3).

Superiority is met with regard to these first two factors under the Federal Rule of Civil Procedure 23(b)(3) analysis. Given the low amount of damages for individual members of the Settlement Class in this case and the fact that there are common issues shared by the Settlement Class members, the individual interest in controlling the case through separate actions is relatively low. *See Kizer,* 2012 U.S. Dist. LEXIS 63795, at *20 ("Given the small amount of damages for most class members in this case and the fact that there are common issues shared by the class members, the individual interest in controlling the case through separate actions is relatively low.").

Furthermore, concentrating the litigation and settlement of this action in this forum is in the interest of judicial economy. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 679 (S.D. Fla. 2011).  Finally, under the Federal Rule of Civil Procedure 23(b)(3) superiority analysis, since the Court is asked to certify this action for settlement purposes only, to approve the Settlement Class (Class #1 and Class #2) it would not need to determine whether the subject Settlement Class would be manageable for litigation purposes. *Kizer v. Summit Partners, L.P.*, 2012 U.S. Dist. LEXIS 63795, at *21 (E.D. Tenn. May 7, 2012) (approving class settlement under superiority analysis where "given that this matter did not go to trial, concerns regarding management of the class action are minor"). Here, the superiority analysis under Federal Rule of Civil Procedure 23(b)(3) is met.

The Settlement Class members who received FirstFleet's COBRA Notice are unlikely to be aware that their rights may have been violated, and are therefore unlikely to prosecute individual claims. *See Ramirez v. Palisades Collection LLC,* 250 F.R.D. 366, 374 (N.D. Ill. 2008) (finding class action superior method of litigation where class members might not be aware that they have legal claims). Moreover, given the relatively small size of the claims at stake (involving discretionary statutory penalties, which may not be awarded), it is unlikely that class members would pursue their claims.

Moreover, even if Settlement Class members were able to individually prosecute their claims, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant,* 710 F.2d 711, 718 (11th Cir. 1983). Thus, a class action is superior to other available methods for fairly and efficiently adjudicating this dispute.

### D.  The Class Notice Meets the Requirements of Rule 23(c)

The Parties submit that the proposed Notice and Official Notice Form (hereinafter "Class Notice"), copies of which are attached to the Settlement Agreement as Exhibits B and C, meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B). That rule, in pertinent part, provides as follows: Under Federal Rule of Civil Procedure 23(c)(2)(B), the notice must concisely state in plain, easily understood language:

(i)      the nature of the action;

(ii)     the definition of the class certified;

(iii)    the class claims, issues, or defenses;

(iv)     that a class member may enter an appearance through an attorney if the member so desires;

(v)      that the court will exclude from the class any member who requests exclusion;

(vi)     the time and manner for requesting exclusion; and

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notice of Settlement includes this information.  (Ex. C). Under the Settlement, each member of the Settlement Class will be sent a Short Form Postcard Notice of the proposed settlement via U.S. First-Class Mail, informing them of the terms of the Settlement and their right to opt-out or object. The Short Form Notice will direct the Settlement Class Members to the Settlement Administrator's website where additional information will be provided. *(See* Settlement Agreement, at Ex. B.)  The content of the long form of the Notice is also reasonable and appropriate.  As such, this Court should approve both the Short Notice and the Long Form Notice of Settlement and find that the contents and methods of dissemination are reasonable.

## <u>CONCLUSION</u>

For the foregoing reasons, the Parties respectfully request that the Court enter the proposed Preliminary Approval Order and (a) certify the Settlement Class for settlement

purposes only; (b) appoint Plaintiff as the Class Representative and Plaintiff's counsel as

Class Counsel for settlement purposes; (c) authorize distribution of the Notice of Settlement

to the Settlement Class; (d) set a Deadline to Opt Out or Object; and (e) set a date for a Final

Approval Hearing, not to occur until at least ninety (90) days after the Court's Preliminary

Approval Order.

Dated:  February 22, 2019

Respectfully submitted,

By:  /s/ Brandon J. Hill
Brandon J. Hill, Esq.
Florida Bar No. 37061
E-mail: bhill@wfclaw.com
Secondary E-mail:  jriley@wfclaw.com
Luis A. Cabassa, Esq.
Florida Bar No. 53643
E-mail: lcabassa@wfclaw.com
Secondary E-mail: twells@wfclaw.com
WENZEL FENTON CABASSA, P.A.
1110 N. Florida Avenue,
Suite 300
Tampa, FL 33602
Telephone: (813) 224-0431
Facsimile:  (813) 229-8712

By:  /s/ Sherril M. Colombo
Sherril M. Colombo, Esq.
Florida Bar No. 948799
E-mail: scolombo@littler.com
Secondary E-Mail: kljackson@littler.com
Stefanie Mederos, Esq.
Florida Bar No. 12041
E-mail: smederos@littler.com
Secondary E-mail: ccano@littler.com
LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone: (305) 400-7500
Facsimile:  (305) 603-2552

*COUNSEL FOR DEFENDANT*

Felipe Fulgencio, Esq.
Florida Bar No. 95961
E-mail: Felipe@FulgencioLaw.com
FULGENCIO LAW, PLLC
105 S. Edison Avenue
Tampa, FL 33606
Main No.: 813.463.0123
Fax No.: 813.670.1288

*COUNSEL FOR PLAINTIFF*

FIRMWIDE:162616152.1 068280.1040